### FERGUSON v. CITY OF HOOKER.

No. 24224. June 30, 1934.

Rehearing Denied Sept. 25, 1934.

Ross Rizley and C. W. Ferguson, for plaintiff in error.

E. R. Jones, Warren T. Spies, and George C. Abernathy, for State Bar of Oklahoma.

McNEILL, J. This is a disbarment proceeding. The administrative committee recommended disbarment. The Board of Governors recommended likewise.

Clifford W. Ferguson, referred to as respondent, is a member of the Oklahoma State Bar and engaged in the practice of law in the city of Hooker, Texas county, Okla. In July, 1931, an accusation was filed with the administrative committee for section 31 of the State Bar against respondent charging him with violating his oath of office and with being guilty of unprofessional conduct as an attorney at law while said respondent was city attorney of said city of Hooker.

It appears that respondent while acting as city attorney filed a condemnation suit on August 28, 1930, in the district court of Texas county, Okla., and undertook to have commissioners appointed to appraise the damages to lot 6 in block 24 in said city, the fee title to which was vested in himself. The action was entitled "Incorporated City of Hooker, a Municipal Corporation, Plaintiff, v. Clifford W. Ferguson, Defendant." The petition for condemnation recited that the city council of the city of Hooker had authorized and directed the filing of the condemnation suit and had determined that the taking of said lot was a necessary public use.

It also appears that respondent advised the judge of the district court of said county, to whom a petition for appointment of commissioners was presented, that, while he was acting as attorney for the city of Hooker, he was also the defendant in the action; that he was authorized to represent both parties; that the suit was friendly; that the city of Hooker and respondent had agreed on a price of $500 for the lot; that he did not execute a deed for the reason that respondent and the city council thought it would look better to the public to have the lot condemned, in order that the judgment might be paid out of the sinking fund of said city.

The lot was appraised at $500. Judgment was entered in that amount on February 9, 1931, and the title to said lot was adjudged and decreed in said city.

Subsequently, on April 29, 1931, the said treasurer of said city paid to respondent the sum of $517, the amount of said judgment and costs accrued, out of the sinking fund of said city. Before issuing a check covering said judgment and costs, the city treasurer advised respondent that he should present a resolution from the city council authorizing the treasurer to invest the sinking fund in said judgment. On April 29, 1931, in conformity with said request, respondent presented a signed copy of what is known as resolution No. 5, purporting to have been duly adopted by the city council of Hooker on August 11, 1930. That resolution recited that a public necessity existed for the acquisition of the lot in question, and other lots, and that the mayor and council of said city authorized that proceedings be filed and instituted for the acquisition of said property, and that said treasurer be authorized to invest any sinking fund money on hand in any judgments obtained under said proceedings. Said respondent also presented a certified copy of the journal entry of judgment in the condemnation proceedings relative to the lot in question, and after obtaining said check respondent went to California for the purpose of returning his family to his home in Hooker.

It also appears respondent had mortgaged the lot to the Farmers & Merchants National Bank of Hooker in the sum of $524.50, and at the time of the filing of said suit there were back taxes against said lot. Neither mortgagee nor the county treasurer was made a party to the condemnation proceedings. Respondent, at the time said judgment was entered and before he collected the judgment from the city treasurer out of the sinking fund of said city, knew that a resale tax deed had been issued covering the lot in question and that the mortgage remained unpaid.

The petition for condemnation recited, "and that this action is brought by and with the request of the city council of the city of Hooker, Okla." The complaint filed by the

city of Hooker against respondent specifically charged that the respondent prepared minutes of the meeting of the city council showing that a resolution had been passed, and that the lot in question, in conjunction with other lots, had been ordered to be condemned by the city council, when in truth and in fact no such order had been made by said city council, and that said respondent had submitted said minutes to the town clerk and ordered said clerk to spread the same of record.

The Board of Governors, in part, made the following findings of fact and conclusions of law:

"The evidence discloses and the board so finds that the motion in the minutes was written therein between two of the paragraphs of the original minutes at a time and upon a typewriting machine other than used by the city clerk.

"That the records of the city of Hooker show no passage of resolution No. 5 and the evidence shows that the city clerk knew nothing about such a resolution.

"That the alleged authority given by the mayor was of no force and effect and the evidence of Aug. Lorenz, who was the mayor at that time, is quite clear and positive that the said instrument was presented to him for his signature as well as resolution No. 5 by the respondent at a time when the respondent presented a number of other instruments and papers connected with the city attorney's work, and after the offices of both the city attorney and mayor had expired, and that said resolution and said authority were prepared and by some means became a part of the city clerk's files by respondent in order to bolster up his case and pretend to show some authority for proceeding in the manner he did.

"Upon the hearing conducted by a member of the board on July 11, 1932, the witnesses not only failed to deviate from their former testimony, but the respondent was unable to produce any testimony showing a different state of facts from that which the record contained, but the evidence of the witnesses corroborated and strengthened the conclusion that the respondent is guilty.

"That the respondent commenced the condemnation proceeding of his own lot in which the city of Hooker is plaintiff and the respondent is defendant and represented both sides of the case, both the city and himself, without authority of the city of Hooker, and without the knowledge and consent of the city of Hooker. That he altered, or caused to be altered, the minutes of the city clerk's office in order to make it appear that condemnation proceedings were to be brought to condemn his lot. That the alleged authority by the mayor authorizing the respondent to conduct said proceedings in behalf of the city of Hooker, and also to represent himself, was procured by respondent through artifice and fraud.

"Conclusions of Law.

"That the respondent has violated the rules of the State Bar of Oklahoma in that he represented conflicting interests without the consent of the parties interested, and obtained money from his clients by artifice, misrepresentation, and fraud, and has violated the oath taken by him upon admission to the Bar.

"That by the commission of the acts set forth, the respondent has proven himself wanting in professional and personal conduct and integrity and not worthy of public confidence and unsafe and unfit to be entrusted with the duties and powers of an attorney at law, and that he has ceased to possess the good moral character of an attorney."

Prior to the institution of the condemnation proceedings, there seems to have been some friendly discussion by the city council about obtaining the lot in question, but the council was of the opinion that respondent was asking too much for the same. Every member of the city council denies participating in any official action whereby said respondent was authorized to institute condemnation proceedings in reference to said lot 6, and denies any personal knowledge or information that any authorization was made by the council for the condemning of said lot, though the mayor and city clerk admit that their signatures are attached to the resolution authorizing respondent to institute condemnation proceedings.

Respondent testified that he condemned the lot after a discussion and an agreement with the mayor and two members of said city council when not in official session. It seems reasonable to conclude from this record that resolution No. 5, containing the authorization of the institution of the condemnation proceedings, was not prepared or signed until after the judgment in said condemnation proceedings had been obtained.

The record also reasonably indicates that the minutes of August 11, 1930, which authorized the condemnation of the lot of respondent, were altered after they had been written up by the clerk by the insertion of four lines therein which referred to resolution No. 5, relating to the condemnation of said lot 6, block 24, and that these four lines were written on a different typewriter from that used by the city clerk in writing the minutes, but as to the exact time, manner,

and by whom these alterations were made, is not altogether clear or convincing. It is not disputed that respondent obtained the minute books and papers from the city clerk's office for the purpose of writing up certain resolutions and ordinances.

It is undenied that respondent advised the district judge in his response to the court's question about representing both parties that he was authorized to represent both parties. There is nothing to show official authorization for the condemnation of the lot at the time said suit was filed. It was not commendable action to file such a suit under this record, nor can we overlook the action of respondent in accepting a check from the city treasurer with full knowledge at the time that the mortgage to the Farmers & Merchants National Bank of Hooker had not been released, and that a resale tax deed had been issued against said lot.

Applying all reasonable doubts and inferences in favor of respondent, we are of the opinion that disciplinary action is merited in this case. To respondent's credit, satisfactory restitution has been made to the city for the amount which he received from the city in payment of the condemnation judgment, and since that has been made, the city of Hooker has requested a dismissal of the complaint it lodged against respondent.

In the face of this record, we are of the opinion that respondent should be disbarred. However, an opportunity is hereby granted to respondent at the end of one year from the delivery of this opinion to present satisfactory evidence for reinstatement to the Board of Governors for their further consideration and recommendation to this court.

SWINDALL, OSBORN, BUSBY, and WELCH, JJ., concur. RILEY, C. J., not participating. CULLISON, V. C. J., and ANDREWS and BAYLESS, JJ., absent.